[Civ. No. 3560.   Second Appellate District, Division Two.—December 31, 1921.]

## JAY PEET, Appellant, v. PEOPLE'S TRUST AND SAVINGS BANK (a Corporation), et al., Respondents.

[1] CHATTEL MORTGAGE — DEFAULT — SEIZURE BY MORTGAGEE — SALE WITHIN REASONABLE TIME.—A mortgagee of personal property who takes possession of the property according to the terms of the instrument but who neglects to sell it within a reasonable time is liable for its conversion.

[2] CONVERSION—SEIZURE OF MORTGAGED CATTLE—DEFAULT OF MORTGAGOR—TIME FOR PREPARATION FOR SALE—PLEADING—INSUFFICIENCY OF AFFIRMATIVE DEFENSE.—In an action by a mortgagor for the conversion of mortgaged cattle seized by the mortgagee under the terms of the mortgage giving it the power of seizure upon default, the affirmative defense that the mortgagee was entitled to such time after the seizure as might be necessary to fatten and render the cattle marketable, which at the time of seizure were in a dying condition, was not made out where it was not shown what was done with the cattle or what was their condition for a period of five and one-half months, or what was their condition at the end of such period.

[3] ID.—PAYMENT OF MORTGAGE—TENDER OF CATTLE—INSUFFICIENT PLEADING OF TENDER.—An allegation in the answer in such action that after payment of the obligation secured by the mortgage the defendant tendered "the cattle remaining" in its hands to the plaintiff is not a sufficient allegation of tender, where the number remaining is not alleged, or their condition, or the reason for a diminution of the herd.

[4] ID.—RETENTION OF CATTLE AFTER SEIZURE WITHOUT SALE—UNREASONABLE TIME—EVIDENCE.—In this action for the conversion of mortgaged cattle, the evidence is insufficient to show a justification of the retention of the cattle for the period of five months after seizure without sale.

[5] ID.—RIGHT OF POSSESSION — PREJUDICIAL INSTRUCTION.—An instruction that if it were found that the note was unpaid at the time of seizure of the cattle and that the mortgage gave the defendant the right to take possession in case of default, the mortgagee had the right of possession against the mortgagor, was prejudicially erroneous.

[6] ID.—DEMAND—WHEN NOT NECESSARY.—While it is the general rule that a demand is necessary to a charge of conversion, it is not required where it would be unavailing.

APPEAL from a judgment of the Superior Court of Riverside County. Hugh H. Craig, Judge. Reversed.

The facts are stated in the opinion of the court.

D. B. Chapin and Paul Blackwood for Appellant.

Sarau & Thompson for Respondents.

WORKS, J.—This is an action for the conversion of a band of cattle. Defendant had judgment after a trial by jury and plaintiff appeals.

Appellant had executed to respondent bank a chattel mortgage on a large number of cattle, the instrument providing that upon default in the payment of the obligation for the performance of which it was security the bank might take possession of the stock, sell them, and apply the proceeds toward the payment of the mortgage debt. There was a default upon the part of appellant and the record shows that the cattle covered by the mortgage and which were still in existence were taken by the bank under the terms of the mortgage giving it power to make the seizure. Appellant brought this action upon the theory that the bank did not proceed to sell the cattle after the taking and that a conversion thereupon resulted. [1] In his brief many authorities are cited to the effect that a mortgagee of personal property who takes possession of the property according to the terms of the instrument, but who neglects to sell it within a reasonable time, is liable for its conversion. This rule seems to be well settled (*Burton* v. *Randall,* 4 Kan. App. 593 [46 Pac. 326]; *Howery* v. *Hoover,* 97 Iowa, 581 [66 N. W. 772]; *Marseilles Mfg. Co.* v. *Perry,* 62 Neb. 715 [87 N. W. 544]; *Marchand* v. *Ronaghan,* 9 Idaho, 95 [72 Pac. 731]).

The cattle were seized in Riverside County, near the Colorado River, on or about April 20, 1918, and the action was commenced February 4, 1919. In a special defense which is set up in the amended answer the bank admits the taking of the stock, alleges that they were at the time of the taking in a dying condition because of appellant's failure to care for and feed them, and that "had a sale of said cattle taken place at the time or immediately after the said de-

fendant aforesaid took up the same the said defendant would have received nothing therefor, and the said plaintiff, mortgagor in said mortgage, would have received no credit whatsoever upon the note secured by said mortgage.'' It is then alleged that, in order that the cattle might not die, respondent bank took them across the river into Arizona, that being the only place where food and grazing could have been had at the time for them. It is also averred in the amended answer that on October 7, 1918, the mortgage on the cattle was discharged by the payment by a co-maker with appellant of the note which it secured, that after the payment respondent tendered the cattle to the co-maker on the note and to appellant, but that each of them refused the tender, that there are *now* left of the seized herd (the amended answer having been filed September 22, 1919) forty-five head of cows and calves, a total of at least nine less than the number seized, and that the cattle thus remaining are *now* in good condition owing to the care and feed which respondent bank has given them.

[2] It is evident from these allegations that respondent's purpose was to set up a defense that, in determining what amounts to a reasonable time within which livestock seized under the provisions of a mortgage must be sold, the mortgagee is to be allowed such time as may be necessary to fatten the stock and render it marketable if it was in bad condition and unmarketable at the time of the seizure. If it be admitted that a period of time so consumed is under the law to be allowed to the mortgagee before making sale, within the rule that sale must be made within a reasonable time, the amended answer before us does not state such a defense. The pleading leaves it to conjecture to determine what was being done with the cattle between April 20th, when the seizure occurred, and October 7th, when the note was paid and a sale was no longer necessary, and, also, what was their condition when the latter date arrived and at all times between the two dates. This was a period of five months and a half. Why was not the sale made within that time? We cannot assume that the cattle could not have been put in condition for the market within less than the period named. To make such an assumption would be unwarrantably to stretch the doctrine of judicial notice. And yet the portion of the affirmative defense of the amended

answer referred to is valueless without the assumption, for without it no defense is stated.

[3] If we look to the part of the amended answer alleging a tender we are met with the same situation. The tender was not made until after payment of the obligation secured by the mortgage, which event occurred on October 7th. We have already mentioned the fact that the answer alleges a tender, but we have not stated the form of the allegation. It is merely this: That, after the date mentioned, defendant bank tendered "the cattle remaining" in its hands at that time. If we construe this language as referring to cattle remaining of those seized under the power in the mortgage, although there is no allegation to that effect and the aver· ment is deficient in that respect, we are not told how many were remaining, nor what their condition was, nor what was the reason for a diminution of the herd seized to the number remaining. The allegation was far from sufficient as an allegation of tender.

Appellant does not raise these questions of pleading. The cause seems to have been tried upon the theory that the amended answer states a defense in so far as the questions to which we have adverted are concerned. We have dealt with the questions for the reason that a reversal of the judgment is necessary upon points which are presented by appellant, and because, in the event of a second trial, respondent bank should be accorded the opportunity of amending its pleading if it be so advised.

[4] Appellant contends that the evidence is insufficient to support the verdict and the contention must be sustained. The evidence showed without dispute that the cattle were taken by respondent bank because of the non-payment of the note which was secured by the mortgage. The only justification attempted to be advanced for the failure to sell them at once is the new matter set up in the answer and to which we have referred above. Granting that this new matter constituted a defense, although we have shown that it does not, there is no evidence to support it and the verdict is, of course, unjustified because of the same lack of evidence. The testimony in support of the affirmative defense, taking everything that was said by the witnesses on the subject, showed only that the cattle were thin and run down at the time of the seizure; that the bank took

them into Arizona a month after the seizure; that there was better pasture for them at the place in that state to which they were taken than at the place where the seizure occurred; and that a parcel of the cattle, about a third of the herd which was seized, was inclosed in a corral in California while the herd was being gathered for the seizure, that respondent bank "sent down a load of hay to feed the cattle" in the parcel, and that, apparently while in the corral and before being taken to Arizona, they were well fed. This attenuated line of evidence utterly fails to meet the exigencies of the affirmative defense, granting again that the matter alleged constituted a defense. The evidence exhibits the vice which we have discovered in the answer; there is nothing in it to show what was the condition of the cattle at any time after the seizure, except that a third of the herd was well fed at one period before the removal to Arizona. There is nothing whatever to show that the cattle could not have been sold to advantage long before the date when the debt was paid by appellant's co-signer on the note, five months after the seizure. In short, there is nothing whatever in the evidence to justify a retention of the cattle for five months after seizure without sale. In this respect the evidence was totally insufficient to support the verdict.

[5] The trial court instructed the jury that if they found from the evidence that the note was unpaid at the time of the seizure of the cattle, and that the mortgage gave respondent bank the right to take possession in case of default, "then and in that event the defendant People's Trust and Savings Bank had the right of possession of said property mentioned in said mortgage and the whole thereof against the mortgagor in said mortgage, to wit, the plaintiff in the above entitled action, and your verdict must be for the defendants." The jury could not have done otherwise than render verdict for respondent bank under this instruction. It completely obviated the necessity of proof by the bank of the only real defense it had made to the complaint, the defense of new matter to which we have alluded at length above. The instruction should not have been given.

Respondent bank contends that, as it acquired possession of the cattle rightfully, it cannot be charged with a conversion of them unless a demand first shall have been made for their return. There was no proof of such a demand.

[6] It is, of course, the general rule that a demand is necessary in such a situation, but it is not always required. Where, for instance, a demand would be unavailing, it need not be made (*Wood* v. *McDonald*, 66 Cal. 546 [6 Pac. 452]; *Hand* v. *Scodeletti*, 128 Cal. 674 [61 Pac. 373]), for it would then be an idle ceremony. So it would have been here. The amended answer shows that respondent claimed the right to hold the cattle and fatten them for sale, and it is plain that the right would have been insisted on, even in the face of a demand, up to the time it is alleged that the note was paid by appellant's co-signer. Further, from that time forward, and even from an earlier period, a demand would have been unavailing for the same reason that the tender alleged in the amended answer was a nullity. As already pointed out, the allegation is that tender was made of "the cattle remaining" in the hands of respondent bank at the time. The evidence introduced by respondent shows, as well, that some of the members of the herd died through "bogging down" in a marshy country soon after they were taken into Arizona and while they were in custody of the bank. Any demand which appellant might have made for a return of the seized stock, therefore, could not have been complied with. Under all the circumstances stated we conclude that no demand was necessary.

At the trial of the cause a motion for a nonsuit was granted as to respondent Odell, but appellant makes no point as against the order granting that motion. Respondent Odell is, therefore, eliminated from the case.

The judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Finlayson, P. J., and Craig, J., concurred.